In the Matter of the Claim of GORDON BELL, Respondent. EDWARD CORSI, as Industrial Commissioner, Appellant.

Third Department, December 8, 1953.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown and Francis R. Curran* of counsel), for appellant.

*Gordon Bell,* respondent in person.

Coon, J. Claimant is a professional hockey player. On October 10, 1951, he entered into a written contract with the Professional Hockey Club of Syracuse, Inc., by the terms of which "The Club hereby employs the Player as a skilled Hockey Player for the term of one year commencing October 1st 1951 * * * ". Claimant's annual salary was to be $4,000, payable in consecutive semimonthly installments, following the commencement of the league games. If claimant was not in the club's employ for the entire period of the league games, then his salary was to be that sum of money equal to the ratio of the number of days of his actual employment to the number of days of the league games. The active playing season in the league started during October, 1951, and continued until March 16, 1952. On March 31, 1952, claimant filed a claim for unemployment insurance benefits. The Industrial Commissioner ruled claimant

ineligible on the ground he was not totally unemployed. After a hearing a referee overruled the initial determination of the commissioner, and the Appeal Board affirmed the referee. The commissioner appeals from the decision of the Appeal Board.

The appeal poses only the question whether a professional athlete, hired on an annual basis, for an annual salary, is " totally unemployed " within the meaning of the Unemployment Insurance Law during the " off-season."

The Unemployment Insurance Law (Labor Law, § 511) defines " employment " in this language: " ' Employment ' means any service under any contract of employment for hire, express or implied, written, or oral." At all times involved here section 522 of the Labor Law (prior to amendt. by L. 1953, ch. 720) provided: " 'Total unemployment ' means the total lack of any employment on any day, caused by the inability of a claimant who is capable of and available for work to engage in his usual employment or in any other for which he is reasonably fitted by training and experience."

Looking at some of the terms of claimant's contract of employment we find numerous obligations on the part of claimant beyond playing hockey and beyond the " League season." For instance, he was required to play in " exhibition " games; to report for training " at the time and place fixed by the Club, in good physical condition "; to participate " in any and all promotional activities of the Club "; to report for practice " at such time and place as the Club may designate "; if disabled, to " submit himself for medical examination and treatment by a physician selected by the Club "; to permit the taking and use of any photograph, motion picture or television of himself; to accept and be bound by an assignment of his contract; to report to the assignee of his contract at such time and place as directed in the notice of assignment; to arbitrate any dispute, and to do other things.

On the negative side, claimant agreed not to do many things during the term of the contract, and such provisions are not limited to the playing season.

From the express terms of the contract it would seem clear that claimant was obligated to perform services not only during the playing season, but during the " off-season," and was paid his salary for his services and for his contractual obligation to refrain from doing certain things during the entire year without limitation to the actual playing season. We think he was " employed " during the entire period of the contract, and, conversely, was not " totally unemployed " within the intent

and purpose of the Unemployment Insurance Law. The fact that the employer may elect to permit claimant to be absent from active duty during all or part of the off-season, or does not object to his doing other work at such times, does not alter his legal status as " employed " by it, for he must hold himself in readiness and is paid therefor.

To hold otherwise could open the door to an extension of the benefits of unemployment insurance far beyond well understood and expressed purposes of the law. The Legislature recognized the need for the law to prevent the spread and lighten the burden of unemployment " which now so often falls with crushing force upon the unemployed worker and his family " and expressly recognized it as an improvement over " the barren actualities of poor relief assistance." (Labor Law, § 501.) It is common knowledge that many professional athletes and other seasonal employees receive very large annual salaries and were not contemplated as beneficiaries of unemployment insurance, though they do little or no actual work in the off-season.

While there appears to be no judicial authority in this State upon the precise question, there is authority for quite analogous situations. (*Matter of Leshner* [*Corsi*], 268 App. Div. 582; *Matter of Korth* [*Murphy*], 266 App. Div. 934, motion for leave to appeal denied 292 N. Y. 724; *Matter of Stewart* [*Corsi*], 279 App. Div. 500.)

The weight of authority by boards in other jurisdictions is in accord with the views expressed herein. (Missouri Unemployment Compensation Commission, Decision No. IC — 4864 [1951 — hockey player]; Pennsylvania Board of Review, Decision No. B — 27640, Case No. B — 44 — 99 — D-2979 [baseball player].)

The decision of the Unemployment Insurance Appeal Board should be reversed, and the initial determination of the Industrial Commissioner reinstated, without costs.

Foster, P. J., Bergan, Halpern and Imrie, JJ., concur.

Decision of the Unemployment Insurance Appeal Board reversed, and the initial determination of the Industrial Commissioner reinstated, without costs.